UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GAIL ZAREMA,

               Plaintiff,               CIVIL ACTION NO. 06-14768

        v.                          DISTRICT JUDGE LAWRENCE P. ZATKOFF

COMMISSIONER OF              MAGISTRATE JUDGE VIRGINIA M. MORGAN
SOCIAL SECURITY,

               Defendant.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

       This Social Security case comes before the court on the parties' cross-motions for summary judgment.  For the reasons stated herein, the court recommends that the Commissioner's motion be denied, that plaintiff's motion be granted, and that this matter be remanded to the Commissioner pursuant to sentence four for further proceedings.

### II.  Background

       On March 30, 2004, plaintiff filed an application for Social Security Disability Insurance Benefits due to Meniere's disease, ear ringing, imbalance, earaches, carpal tunnel, and high cholesterol, with a disability onset date of March 15, 2004.  (Tr. 16, 55-59)  Plaintiff  has a high school education, with a work history including employment as a machine operator.  (Tr. 59, 64)

The Social Security Administration (SSA) denied plaintiff's claims on initial review. (Tr. 30-34)  Plaintiff then requested a hearing before an administrative law judge (ALJ).  (Tr. 37)  The hearing was held on September 26, 2005, before ALJ Mason D. Harrell, Jr.  (Tr. 160-187)  Plaintiff, represented by counsel, appeared and testified at the hearing.  The ALJ also took testimony from a vocational expert (VE).

On January 18, 2006, the ALJ issued a decision denying plaintiff's claim.  (Tr. 13-26)  The ALJ determined that plaintiff had the following medical determinable impairments: "obesity, Meniere's disease, right shoulder injury, lumbar spine radiculopathy, and history of carpal tunnel syndrome."  (Tr. 24)  The ALJ further determined that plaintiff's impairments were collectively "severe" within the meaning of 20 C.F.R. § 404.1520(a)(4)(ii), but that she did not have an impairment or combination of impairments that met or equaled any impairment listed in Subpart P, Appendix 1 of the Social Security Regulations.  (Tr. 24-25)  In addition, the ALJ found that plaintiff retained the residual functional capacity (RFC) to perform at:

> the light exertional level, with the following nonexertional
> limitations: avoid shoulder lifting on the right; need to sit or stand
> at will; avoid uneven terrain (must work on flat ground); avoid
> constant, forceful gripping or grasping; avoid balancing or
> climbing stairs; avoid exposure to loud noises; no exposure to
> temperature extremes, must work in a clean environment with air
> conditioning; and allowed to work [sic] one day of work per month
> due to symptom exacerbation.  [Tr. 25]

The ALJ further concluded that, while plaintiff could not perform her past relevant work, there were a significant number of jobs in the national economy that she could perform within that RFC.  Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the

Social Security Act.  (Tr. 25)  Plaintiff was 43 years old at the time of the ALJ's decision.  (Tr.

17)

Following the ALJ's denial of her claim, plaintiff filed a request for review of the

decision with the SSA's Appeals Council.  (Tr. 11)  The Appeals Council denied the request on

September 19, 2006.  (Tr. 4-6)  The ALJ's decision thus became the final decision of the

Commissioner.

On October 23, 2006, plaintiff filed suit for review of the Commissioner's decision

pursuant to 42 U.S.C. § 405(g).  As noted above, the parties have filed cross-motions for

summary judgment.  Plaintiff claims that the ALJ erred in forming the hypothetical question

posed to the vocational expert and determining whether plaintiff's impairments met or equaled a

listed impairment.   The Commissioner contends that the disability determination is supported by

substantial evidence and should thus be affirmed.

## III.  Legal Standards

### A.  Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve months."  42 U.S.C. §

423(d)(1)(A).  Further,

> an individual shall be determined to be under a disability only if
> his physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but

> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that she is disabled. Foster

v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate Social Security Disability claims. See 20 C.F.R. §

404.1520. As discussed in Foster, Id. at 354 (citations omitted), this process consists of the

following:

> The claimant must first show that she is not engaged in substantial
> gainful activity. Next the claimant must demonstrate that she has a
> "severe impairment." A finding of "disabled" will be made at the
> third step if the claimant can then demonstrate that her impairment
> meets the durational requirement and "meets or equals a listed
> impairment. If the impairment does not meet or equal a listed
> impairment, the fourth step requires the claimant to prove that she
> is incapable of performing work that she has done in the past.
> Finally, if the claimant's impairment is so severe as to preclude the
> performance of past work, then other factors, including age,
> education, past work experience, and residual functional capacity
> must be considered to determine if other work can be performed.
> The burden shifts to the Commissioner at this fifth step to establish
> the claimant's ability to do other work.

**B.  Standard of Review**

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g),

which provides, in part:

> Any individual, after any final decision of the Commissioner of
> Social Security made after a hearing to which he was a party,
> irrespective of the amount in controversy, may obtain a review of

such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Brainard, 889 F.3d at 681. Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

## IV. Analysis

### A. Accuracy of Hypothetical Question/ Treating Physician Rule

At the hearing, the ALJ posed a hypothetical question to the VE regarding the ability of an individual of plaintiff's age, education, work experience, and RFC to engage in substantial gainful activity. Specifically, the ALJ asked the VE to assume:

> there's an individual who has a high school education, and is limited to a light range of work with a sit stand option. And should not be exposed to any loud noises. And should do no lifting above shoulder level on the right, and no constant forceful gripping or grasping. Should work on flat ground, no stairs, no requirements to balance. And let's add working in an air conditioned, environment is clean and is evenly temperatured [sic] as an air conditioned environment. [Tr. 182]

In response to the hypothetical, the VE testified, while such a person could not do plaintiff's past relevant work, she could work in a reduced range of general office jobs, a reduced range of order filler type positions, and a reduced range of hand packager positions. (Tr. 183-184) The VE also testified that 9,200 such jobs existed in the region, and 313,000 such jobs existed nationally. (Tr. 184) Based on that testimony, the ALJ concluded that plaintiff was not disabled.

Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates a claimant's physical and mental limitations, and the VE testifies that a person with such limitations is capable of performing a significant number of jobs in the national economy, such testimony is sufficient to support a finding that the claimant is not disabled. Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987). Conversely, where the hypothetical does not paint an accurate picture of the claimant's limitations, the VE's testimony cannot support such a finding. The ALJ is not required to specifically refer to a claimant's medical conditions in the hypothetical. Webb v. Commissioner of Social Security, 368 F.3d 629 (6th Cir. 2004). Further, the ALJ is not required to include in a hypothetical unsubstantiated allegations and complaints. The hypothetical "need only include the alleged limitations of the claimant that the ALJ accepts as credible and that are supported by the evidence." Delgado v. Commissioner of Social Security, 30 Fed.Appx. 542, 548 (6th Cir. 2002).

In this case, plaintiff argues that the hypothetical was inaccurate because it failed to incorporate all of her physical limitations. Plaintiff's argument that the hypothetical was inaccurate is entirely dependent on her argument that ALJ failed to address or give the

appropriate weight to the opinions of her treating physicians:  Dr. Jeffrey R. Levin, Dr. Barina

Zado, and Dr. Mehmet Agabigum.  Plaintiff thus invokes the "treating physician" rule.

The "treating physician" rule provides as follows:

> If we find that a treating source's opinion on the issue(s) of the
> nature and severity of your impairment(s) is well-supported by
> medically acceptable clinical and laboratory diagnostic techniques
> and is not inconsistent with other substantial evidence in your case
> record, we will give it controlling weight.  When we do not give
> the treating source's opinion controlling weight, we apply the
> factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section,
> as well as the factors in paragraphs (d)(3) through (d)(6) of this
> section in determining the weight to give the opinion.  We will
> always give good reasons in our notice of determination or
> decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2).  As the Sixth Circuit stated in Walters v. Commissioner of Social

Sec., 127 F.3d 525, 529-30 (6th Cir. 1997), "[i]n general, the opinions of treating physicians are

accorded greater weight than those of physicians who examine claimants only once."  Indeed, 20

C.F.R. § 404.1527(d)(2) provides that a "treating source's" opinion regarding the nature and

severity of a claimant's condition is entitled to controlling weight if the opinion is "well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence" in the record.  However, as suggested by the

regulation, the ALJ is not bound by a treating physician's opinion if that opinion is not supported

by sufficient clinical findings or is inconsistent with other substantial evidence in the record.

See also Warner v. Commissioner of Social Sec., 375 F.3d 387, 390 (6th Cir. 2004)("Treating

physicians' opinions are only given [controlling or substantial] deference when supported by objective medical evidence").

### 1.  Dr. Levin's opinion

In a form dated September 1, 2005, Dr. Levin, a neurologist, opined that plaintiff could only lift or carry less than ten pounds, either occasionally or frequently.  Dr. Levin also opined that plaintiff could only stand or walk for less than two hours in an eight-hour workday, and sit continuously for less than six hours in an eight-hour workday.  Dr. Levin further opined that plaintiff had moderate limitations in pushing and pulling, and that she must lay down fifteen minutes every one hour.  In Dr. Levin's view, plaintiff was also restricted from repetitive motion, heavy lifting, bending, and stooping.  (Tr. 152)

The ALJ gave "little weight" to the September 1, 2005 opinion of Dr. Levin for several reasons.  (Tr. 20)  First, as noted by the ALJ, Dr. Levin's progress notes and treatment of plaintiff do not support his later opinion.  (Tr. 20)  An ALJ considers the actual treatment of a plaintiff when evaluating the intensity and persistence of a plaintiff's symptoms, including pain. 20 C.F.R. § 404.1529(c)(3)(v).  In this case, the record contains four separate reports from Dr. Levin, and while the reports consistently state that plaintiff suffered from bilateral carpal tunnel syndrome, cubital tunnel syndrome, and lumbar radiculopathy, at no point do they discuss any restrictions on plaintiff's activities beyond keeping plaintiff off work.  (Tr. 154, 155, 156, 157) When discussing plaintiff's impairments, Dr. Levin's notes show that plaintiff had weakness in his wrists and hands, but the ALJ's hypothetical question did incorporate limitations on lifting and constant forceful gripping or grasping.  (Tr. 154, 157, 182)  Regarding plaintiff's lower

extremities, Dr. Levin's notes only state, at various times, that plaintiff's gait was either mildly

antalgic or normal.  (Tr. 154, 155, 157)  On August, 30, 2004, plaintiff did not have any obvious

weakness during her motor examination, nor did Dr. Levin ever document any such weakness.

(Tr. 157)  Dr. Levin did record plaintiff's complaints of back pain, but never discussed what

effect, if any, that pain caused.  (Tr. 154-157)  Plaintiff never complained of, nor did Dr. Levin

note, that plaintiff felt so tired that she must lay down fifteen minutes every one hour.

     In treating plaintiff's impairments, Dr. Levin solely relied on physical therapy and

medication.  (Tr. 154, 155, 157)  Moreover, while Dr. Levin notes that plaintiff will be offered

physical therapy (Tr. 155), plaintiff was actually referred to physical therapy by Dr. Jerome

Ciullo and that physical therapy was only for "shoulder instability."  (Tr. 139)  On October 4,

2004, Dr. Levin noted that, if plaintiff "continues to have further problems, she may benefit from

epidural steroid injections in the lumbar region."  (Tr. 155)  Plaintiff never received any epidural

steroid injections.  Surgery was not discussed, but Dr. Levin did note that another doctor, Dr.

Jerome Ciullo, had seen plaintiff and did not recommend surgery.  (Tr. 154)  At her hearing,

plaintiff raised the possibility of back and shoulder surgery, but she claimed that she could not

get shoulder surgery until she lost weight.  (Tr. 167)  Regarding her possible back surgery,

plaintiff stated "I'm trying to hold that off till (sic) the, I'm hoping that I can, trying to hold that

off till (sic) as long as possible."  (Tr. 167)

     Overall, Dr. Levin's opinions regarding plaintiff's limitations, while specific and

extensive, are noticeably absent prior to the September 2005 form and are unsupported by

plaintiff's actual treatment.  Dr. Levin and plaintiff were content with a conservative course of

treatment involving medication and physical therapy for plaintiff's shoulder, and Dr. Levin never recommended the epidural steroid injections or surgery. Such conservative treatment, and plaintiff's reaction to it, suggests that plaintiff's pain did not restrict plaintiff to the great lengths described by Dr. Levin in his opinion and provides support for the ALJ's decision.

In addition to discussing Dr. Levin's conservative treatment and lack of restrictions in his progress notes, the ALJ noted that Dr. Levin's opinion conflicted with plaintiff's ability to return to work in July 2004 to September 2004. (Tr. 20) In the ALJ's view, that "work, which included overtime, demonstrated functional abilities that far exceeded the functional restrictions that Dr. Levin endorsed." (Tr. 20) The ALJ, however, failed to recognize that plaintiff was struck by a machine in September 2004 and she alleged that the accident increased her back and shoulder pain. (Tr. 164-165) Dr. Levin's progress notes mention that accident (Tr. 155) and it seems clear that his subsequent opinion encompassed those impairments as well as plaintiff's prior complaints. Plaintiff's work prior to the accident is, therefore, irrelevant to an evaluation of Dr. Levin's opinion and plaintiff's ability to work from July 2004 to September 2004 does not support the ALJ's decision regarding Dr. Levin's opinion.

The third reason the ALJ discounted Dr. Levin's opinion was because the opinion is inconsistent with the other substantial evidence in the record. As noted by the ALJ, "[n]o other treating or examining physician has suggested functional limitations that support the extent to which Dr. Levin has restricted the [plaintiff]." (Tr. 21) Plaintiff had three treating physicians in this case, but the other two treating physicians' opinions discussed different impairments. Dr. Levin's opinion was restricted to certain physical impairments; plaintiff's right shoulder injury,

lumbar radiculopathy, carpal tunnel syndrome, and cubital tunnel syndrome (Tr. 152), while Dr. Zado, a general practitioner, and Dr. Agabigum, an ENT, only offered opinions regarding plaintiff's Meniere's disease, dizziness, and hearing problems. (Tr. 135, 153) As noted above, Dr. Ciullo examined plaintiff at least once and limited his recommendation to physical therapy over surgery. (Tr. 139, 154) Plaintiff attended physical therapy from approximately December 1, 2004, to April, 5, 2005, with Ahmed Zaki, R.P.T. (Tr. 140-151) By March 2, 2005, Zaki noted that plaintiff's muscle strength was within functional limits in all major muscles except her right shoulder. (Tr. 142) Following that session, plaintiff reported some pain, but she was still able to exercise and she reported that she was getting stronger. (Tr. 150-151) Throughout her physical therapy sessions, plaintiff only reported pain in her shoulder or neck (Tr. 140-151), but that could be because she was referred to physical therapy solely for shoulder instability. (Tr. 139)

On May 14, 2004, Dr. Sadia Shaikh, a state agency physician, examined plaintiff and concluded that plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand and walk about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. (Tr. 102) Dr. Shaikh also concluded that plaintiff has restrictions in climbing and should avoid even moderate exposure to heights. (Tr. 103, 105-106) Dr. Shaikh further concluded that plaintiff could walk 10-15 minutes before needing to rest for 10-15 minutes. (Tr. 106) Dr. Shaikh's report was made before plaintiff's accident at work so its probative value regarding plaintiff's shoulder injury is weak, but it, the physical therapy records, and Dr.

Ciullo's referral fail to support Dr. Levin's opinion and the lack of corroborating evidence in the record for Dr. Levin's opinion supports the ALJ's determination.

As noted above, the treating physician's rule requires that the treating physician's opinion be supported by objective medical evidence and consistent with the record as a whole before it is considered controlling. Warner v. Commissioner of Social Sec., 375 F.3d 387, 390 (6th Cir. 2004). In this case, several tests and evaluations, including an MRI and EMG, revealed the existence of the impairments discussed by Dr. Levin, but those tests do not establish what, if any, restrictions follow from that impairment. (Tr. 155, 156, 159) Looking at the record as a whole, Dr. Levin's conservative treatment and plaintiff's reaction to that conservative treatment, in addition to the other medical evidence in the record, provides substantial evidence supporting the ALJ's decision regarding Dr. Levin's opinion.

## 2. Dr. Zado's and Dr. Agabigum's Opinions

As noted above, plaintiff had two other treating physicians in this case: Dr. Zado and Dr. Agabigum. In part of his ruling, the ALJ acknowledged the existence of their treatment of plaintiff (Tr. 18), but the ALJ never specifically evaluated their opinions or statements, nor did he describe the weight he was giving to any of their opinions.

In Wilson v. Commissioner, 378 F.3d 541 (6th Cir. 2004), the Sixth Circuit held that an ALJ's failure to "give good reasons" for the weight given to a treating source's opinion, as required by 20 C.F.R. § 404.1527(d)(2), constitutes reversible error, even if the disability determination is otherwise supported by substantial evidence. The Sixth Circuit indicated that such a failure was subject to harmless error analysis, but stated that "[a] court cannot excuse the

denial of a mandatory procedural protection simply because, as the Commissioner urges, there is

sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a

different outcome on remand is unlikely."  Id. at 546.  Rather, the Court suggested that only a *de*

*minimus* violation of the regulation could constitute harmless error:

> For instance, if a treating source's opinion is so patently deficient
> that the Commissioner could not possibly credit it, a failure to
> observe § 1527(d)(2) may not warrant reversal.  There is also the
> possibility that if the Commissioner adopts the opinion of the
> treating source or makes findings consistent with the opinion, it
> may be irrelevant that the ALJ did not give weight to the treating
> physician's opinion, and that failure to give reasons for not giving
> such weight is correspondingly irrelevant.  Or perhaps a situation
> could arise where the Commissioner has met the goal of §
> 1527(d)(2)–the provision of the procedural safeguard of
> reasons–even though she has not complied with the terms of the
> regulation.  However, none of these possibilities is present in the
> instant case, and the ALJ committed reversible error by depriving
> Wilson of the procedural right given to him by the agency's
> regulation.

Id. at 547 (citations omitted).

In this case, the ALJ's failure to address the opinions of Dr. Zado and Dr. Agabigum was

not harmless.  Both of those treating physicians offered opinions regarding plaintiff's Meniere's

disease and the dizziness it caused.  Dr. Zado provided an undated "Certification of Health Care

Provider" for plaintiff when plaintiff applied for unpaid leave under the Family and Medical

Leave Act.  In that form, Dr. Zado opined that plaintiff suffered from a lifelong ear-related

condition, most likely Meniere's disease, that included dizziness and decreased hearing.  (Tr.

134)  Dr. Zado also opined both that plaintiff was unable to do any kind of work, and that

plaintiff could do some work but was unable to perform one or more of the essential functions of

-13-

her job. (Tr. 135) In response to a question regarding what essential functions of her job plaintiff is unable to perform, Dr. Zado wrote "anything that can danger (sic) her due to dizziness." (Tr. 135)

In a letter dated September 1, 2005, Dr. Agabigum noted that plaintiff has been a patient of his since 2002 and that, prior to coming to Dr. Agabigum for treatment, plaintiff had been diagnosed with Meniere's disease and decreased hearing. Dr. Agabigum's letter also stated that plaintiff continues to have intermittent dizziness related to her inner ear condition that affects her daily routines and work requirements. Dr. Agabigum also wrote that plaintiff is on diet restrictions because of the Meniere's disease, plaintiff uses medication when the dizziness occurs, and that it is recommended that plaintiff use hearing aids and continue medical treatment. (Tr. 153) Earlier, in a letter dated June 9, 2004, Dr. Agabigum wrote that plaintiff "continues to have intermittent dizzy attacks" and "she has a high potential of injuring herself during one of those attacks or even causing death since her episodes are occurring with no preliminary notice." (Tr. 111)

As a preliminary matter, to the extent Dr. Zado opined that plaintiff is too disabled to work at all, the ALJ is free to disregard it. An ALJ is not bound by a treating physician's statement that a claimant is "disabled" or "unable to work." The regulations specifically provide that such a statement is not a "medical opinion" and is thus not entitled to any special deference. 20 C.F.R. § 404.1527(a)(2), (e)(1). The question of whether a claimant is disabled is reserved entirely to the Commissioner. 20 C.F.R. § 404.1527(e)(1).

As to the failure to address specific parts of the opinions, the error is not harmless on the grounds that the opinions are so patently deficient that the Commissioner could not possibly credit it.  Plaintiff was diagnosed with Meniere's disease for years and that disease is a disorder of the inner ear that can affect hearing and balance.  Plaintiff has repeatedly suffered dizzy attacks since 2002 and those attacks have been linked by Dr. Agabigum to her ear troubles.  (Tr. 95, 97, 111, 120, 129)  Plaintiff has had at least four surgeries to replace the PE tubes in her ears since 2001 (83, 113, 120, 124), and while her balance has occasionally improved with the insertion of a new tube (Tr. 124), her problems have always returned.  On September 26, 2002, plaintiff underwent an Electronystagography (ENG) test that recorded "non-localizing indication of directional preponderance to the right."  (Tr. 125)

The ALJ's failure to address the treating physicians' opinions is also not harmless on the grounds that the ALJ's findings were consistent with the treating physicians' conclusions.  The ALJ did specifically find that plaintiff suffered from Meniere's disease and that the impairment was severe (Tr. 24-25), and in the hypothetical question, the ALJ stated that plaintiff cannot work with loud noises, stairs or requirements to balance, and that plaintiff must work on flat ground.  (Tr. 182)  Nevertheless, while heights can exacerbate plaintiff's condition, she has suffered attacks while working on flat ground (169-170, 179-180) and when merely switching positions (Tr. 124), so the hypothetical question was not consistent with the treating physicians' opinions.  The hypothetical also does not account for the hazards around plaintiff that she could fall into.

The ALJ's failure to address the treating physicians' opinions is not harmless because this is a case a situation could arise where the Commissioner has met the goal of § 1527(d)(2). It was incumbent upon the ALJ under 20 C.F.R. § 404.1527(d)(2) to "give good reasons" for its decision to disregard a treating physician's opinion. The ALJ erred by failing to provide any reasons in this case. In reaching such a conclusion, the court does not mean to suggest that an ALJ must parse through every word of a treating source's notes and records and provide an explanation for the weight given to each and every finding. However, where, as here, a treating source makes a recommendation that goes directly to the question of what the claimant is physically capable of doing, § 404.1527(d)(2), as discussed in <u>Wilson</u>, compels that the recommendation be given consideration and that an explanation be given as to the weight given to that recommendation.

A failure to fully discuss the medical basis for his RFC determination and why he rejected certain opinions is grounds to remand this matter because it impedes meaningful review by this court. <u>See</u>, <u>e.g.</u>, <u>Hurst v. Secretary of Health and Human Services</u>, 753 F.2d 517 (6th Cir. 1985)(articulation of reasons for disability decision essential to meaningful appellate review); <u>see</u> <u>also</u> <u>Bailey v. Commissioner of Social Security</u>, 1999 WL 96920 at **4 (6th Cir.(Ohio))("Thus, an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes"); Social Security Ruling (SSR) 82-62 at *4 (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained").

In light of the above findings, the court is presented with the question of whether this matter should be remanded for further proceedings, or whether a judicial award of benefits is

warranted.  In <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171, 176 (6th Cir.

1994), the Sixth Circuit stated the following:

> If a court determines that substantial evidence does not support the
> Secretary's decision, the court can reverse the decision and
> immediately award benefits only if all essential factual issues have
> been resolved and the record adequately establishes a plaintiff's
> entitlement to benefits. . . .  A judicial award of benefits is proper
> only where the proof of disability is strong and evidence to the
> contrary is lacking.

While the ALJ gave an inaccurate hypothetical question at the hearing, it is possible that an

accurate hypothetical question would have lead to the same conclusion and substantial evidence

could exist in this case to support a rejection of the opinions of Dr. Zado and Agabigum.  For

example, plaintiff was apparently able to work for three months despite her Meniere's disease.

(Tr. 184-185)  Consequently, this court cannot say, on the record before it, that the evidence

conclusively establishes that plaintiff is unable to engage in substantial gainful activity such that

an immediate award of benefits by the district court is warranted.

### B. Listed Impairments

Plaintiff also argues that the ALJ erred by finding that her impairments did not meet or

equal any impairment listed in Subpart P, Appendix 1 of the Social Security Regulations.  (Tr.

24-25)  A claimant must satisfy all the criteria of a Listing to be found to have met or equaled a

Listing.  <u>Hale v Secretary of Health and Human Services</u>, 816 F.2d 1078, 1083 (6th Cir. 1987).

Specifically, plaintiff argues that the question of whether a listed impairment has been equaled

"is reserved for a state agency program physician or some other medical expert approved by the

Agency and it does not appear that such an individual ever reviewed" the records submitted

following Dr. Shaikh's examination. (Plaintiff's Motion for Summary Judgment, pp. 15-16).

Contrary to plaintiff's argument, however, 20 C.F.R. § 404.1526(e) provides that "For

cases at the Administrative Law Judge or Appeals Council level, the responsibility for deciding

medical equivalence rests with the Administrative Law Judge or Appeals Council." Moreover,

SSR 96-p provides:

> In 20 CFR 404.1526 and 416.926, equivalence is addressed as a
> "decision . . . on medical evidence only" because this finding does
> not consider the vocational factors of age, education, and work
> experience. A finding of equivalence involves more than findings
> about the nature and severity of medical impairments. It also
> requires a judgment that the medical findings equal a level of
> severity set forth in 20 CFR 404.1525(a) and 416.925(a); i.e., that
> the impairment(s) is ". . . severe enough to prevent a person from
> doing any gainful activity." This finding requires familiarity with
> the regulations and the legal standard of severity set forth in 20
> CFR 404.1525(a), 404.1526, 416.925(a), and 416.926. Therefore,
> it is an issue reserved to the Commissioner.

Regarding the use of State agency physicians in deciding this question, SSR 96-6p

provides:

> The administrative law judge or Appeals Council is responsible for
> deciding the ultimate legal question whether a listing is met or
> equaled. As trier of the facts, an administrative law judge or the
> Appeals Council is not bound by a finding by a State agency
> medical or psychological consultant or other program physician or
> psychologist as to whether an individual's impairment(s) is
> equivalent in severity to any impairment in the Listing of
> Impairments.

In light of the above statements, plaintiff's argument has no merit and the ALJ was correct to make the ultimate decision on whether plaintiff's impairments met or equaled a listed impairment.

## V. Conclusion

For the reasons stated above, the court finds that the ALJ's decision is not supported by substantial evidence. Further, the court finds, that the record does not support a judicial award of disability benefits. See Faucher v. Secretary of Health and Human Services, 17 F.3d 171, 176 (6th Cir. 1994)("If the court determined that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits"). Accordingly, the court recommends that the Commissioner's motion for summary judgment be **DENIED**, that plaintiff's cross-motion for summary judgment be **GRANTED**, and that this matter be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: June 14, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on June 14, 2007.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan